UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

RONALD WELLS, SR.,
   Plaintiff,

vs.                              No. 11-1029

MARK SPENCER, MICHELLE CLARK
AUGUSTIN TWAGLIMANA, and
PAULA RICH,
   Defendants.

### REPORT AND RECOMMENDATION

Now before the court is Plaintiff Ronald Wells, Sr.'s Emergency Motion for a Restraining Order/Injunction [d/e 33]. Pursuant to Local Rule 72.1, the district judge referred the matter to me to conduct a status hearing by telephone conference and for a report and recommendation. After carefully considering all of the submissions of the parties, and pursuant to 28 U.S.C. §636(b)(1)(B), I recommend that the motion be denied.

Plaintiff Ronald Wells, Sr., proceeding *pro se*, is incarcerated at Pontiac Correctional Center. He pursues a claim for violation of his constitutional right to meaningful access to the courts.

In his Emergency Motion for a Restraining Order/Injunction, Plaintiff states that Pontiac Correctional Center officials refused to return him to Protective Custody after he erroneously served time in segregation. Plaintiff alleges that he was placed in segregation by Correctional Officer Timothy Wells, who had told Plaintiff's fellow inmates, Michael Hearn and Joe Sherrod, that Plaintiff informed Warden Marvin Reed that Hearn had stole and sold bulks of typing paper from Pontiac's law library. Plaintiff states that he was placed in segregation because it was determined that he had made threats against Hearn and Sherrod though, according to Plaintiff, it was Hearn and Sherrod who had made threats to him. Plaintiff contends that his placement in segregation was done in retaliation for his pursuit of his right of access to the courts.

Plaintiff goes on at length discussing the ways in which his current placement within Pontiac is interfering with his ability to litigate this and other proceedings. Specifically, he states that his placement in "protective custody kickout" includes limited access to the institutional law library. Plaintiff also alleges that his placement in "protective custody kickout" exposes him to inmates in the general prison population who recognize him as the person convicted of the murder of a well known member of the Black Gangster Disciples, and who have threatened him with violence.

1

During the hearing, Plaintiff argued that the exhibits he attached to his Emergency Motion detail how he was previously attacked at Menard Correctional Center in 2003, that there were witnesses to the conversation during which he was allegedly threatened by Hearn and Sherrod, and that Pontiac Correctional Center had been informed of all this.

Defendants originally filed a Response to Plaintiff's Emergency Motion for a Restraining Order/Injunction arguing that his motion should be denied because the Court does not have jurisdiction to order Pontiac Correctional Center to do or not do anything, as the Illinois Department of Corrections and the Pontiac Correctional Center legal staff were previously dismissed as defendants. At the September 5, 2012, hearing, Defendants' counsel explained that Pontiac staff did look into the matters raised by Plaintiff in his May 18, 2012 Emergency Motion as recently as May 2012, and found his fears as to his safety if he was not placed back into protective custody to be unsubstantiated.

I recommend that Plaintiff's Emergency Motion for a Restraining Order/Injunction be denied for several reasons. The purpose of a temporary restraining order and ultimately a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). To prevail, "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Foodcomm Int'l v. Barry,* 328 F.3d 300, 303 (7th Cir. 2003) (*citations omitted).* If the moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party. *Incredible Tech., Inc. v. Virtual Tech., Inc,* 400 F.3d 1007, 1011 (7th Cir. 2005); *see also Lambert v. Buss,* 498 F.3d 446, 451 (7th Cir. 2007); *Turley v Rednour*, 2011 WL 1897922, at *1 (S.D. Ill. May 18, 2011). A temporary restraining order is an extraordinary and drastic remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Allen-Bey v Indiana State Prison*, 2009 WL 324520, at *1 (N.D.Ind. Oct. 1, 2009).

First, after a thorough review of the Emergency Motion and attached exhibits, and after considering the information presented by the parties during the September 5, 2012 hearing, it is clear that Plaintiff improperly requests prospective injunctive relief for events that have already transpired. The grievances and letters to various prison staff that Plaintiff has attached to his Emergency Motion reveal that he is simply dissatisfied with Pontiac's resolution of the issues stemming from the incident he details and that resulted in his placement in segregation and subsequent placement in "protective custody kickout." *See Mayoral v. Sheahan*, 245 F.3d 934, 939-40 (7th Cir. 2001) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)) ).

Further, Plaintiff has failed to show that an irreparable harm will result if an injunction is not granted where he complains of various things that happened as long ago as 2003 in a different correctional facility. Any such previous incidents at Menard Correctional Center, and any such concerns Plaintiff has about threats to his safety at Stateville Correctional Center are, as Defendants' counsel correctly noted, irrelevant to Plaintiff's Emergency Motion seeking placement in protective custody at Pontiac Correctional Center. The record simply does not justify emergency action as requested by Plaintiff.

Second, Plaintiff's unhappiness with the extent of his access to the law library while in "protective custody kickout" does not justify injunctive relief. By his own admission, he does have access to the law library, albeit on a more limited basis. While he additionally complains that he is unable to place phone calls to his court-appointed attorneys in his state proceedings, he has presented no evidence that he has attempted to follow the procedures in place at Pontiac that permit inmates to place calls to counsel. Given the circumstances, Plaintiff once again improperly prevails upon the Court to exercise its equity powers. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("When a prison inmate seeks injunctive relief, a court need not ignore the inmate's failure to take advantage of adequate prison procedures, and an inmate who needlessly bypasses such procedures may properly be compelled to pursue them."). Ultimately, the injunctive relief Plaintiff seeks is not warranted just because he may prefer to be in protective custody for better access to a phone and the law library, and his Emergency Motion is essentially an extension of his complaint alleging the denial of his access to the courts.

Third, IDOC and Pontiac Corrections Clinical Services Department were indeed dismissed as defendants from this case on July 21, 2011. Even if the injunctive relief Plaintiff requests were warranted here, the Court would not be able to order that relief because Pontiac Correctional Center is not a party. *See U.S. v. Kirschenbaum*, 156 F.3d 784, 794 (7th Cir. 1998) ("A district court may not enjoin non-parties who are neither acting in concert with the enjoined party nor are in the capacity of agents, employees, officers, etc. of the enjoined party.") (citing FED. R. CIV. P. 65).

Finally, during the September 5, 2012 hearing, Plaintiff stated that he had filed a motion with the Court requesting his legal documents. Following the hearing, the Court located Plaintiff's Motion Requesting all of the Documents filed in this Matter be Furnished to the Plaintiff as the Defendant's Intentionally Destroyed the Plaintiff's Set of the Pleadings [d/e 33-2]. The motion was included in more than 60 pages of exhibits, and thus was inadvertently filed as part of the exhibits attached to Plaintiff's Emergency Motion. Plaintiff should be directed to place any motions that he wishes to be filed at the very top of the stack of documents he sends to the Clerk for filing. Plaintiff's motion for his legal documents should be denied at this time. However, because Defendants' counsel indicated that the matter will be looked into, I recommend that Defendants must file a response to Plaintiff's Motion Requesting all of the Documents filed in this Matter be Furnished to the Plaintiff as the Defendant's Intentionally Destroyed the Plaintiff's Set of the Pleadings by September 25, 2012.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) working days after service of this Report and Recommendation. FED.R.CIV.P.72(b); 28 U.S.C.636 (b)(1); CDIL LR 72.1. Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Video Views Inc. v. Studio 21, Ltd.*, 797 F.2d 538 (7th Cir. 1986).

Entered: September 11, 2012

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE