UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| RONALD L. WELLS, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-1029 |
| ) | |
| MARK SPENCER, MICHELLE CLARK, ) | |
| AUGUSTIN TWAGLIMANA, AND ) | |
| PAULA RICH. ) | |
| ) | |
| Defendants. ) | |

## OPINION

This cause is before the Court for consideration of the Defendants' Renewed Motion for Summary Judgment [d/e 111]. Plaintiff Ronald L. Wells, Sr. ("Plaintiff"), proceeding *pro se*, filed his lawsuit in accordance with 42 U.S.C. § 1983 alleging various violations of his constitutional rights. Plaintiff's claims consist of four counts: (1) denial of access to the courts; (2) a state law claim for intentional infliction of emotional distress; (3) failure to properly train and supervise; and (4) conspiracy. Defendants move for summary judgment. Summary judgment must be GRANTED for all the Defendants for the reasons discussed below.

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead

1

must point to admissible evidence in the record to show that a genuine dispute exists. *Id.*; *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

## FACTS

Plaintiff Ronald Wells, Sr. ("Plaintiff") is an inmate with the Illinois Department of Corrections, currently incarcerated at Stateville Correctional Center. [d/e #112]. Plaintiff was incarcerated at Pontiac Correctional Center at all times relevant to the instant claims.

In March 2003, Plaintiff had a case pending before the Tenth Judicial Circuit Court, Peoria County, Illinois. The case pending in the Tenth Judicial Circuit was directly related to Plaintiff's criminal case. Also in March 2003, Plaintiff had a pending United States District Court, Central District of Illinois case, case number 02-1254. Plaintiff's case in the United States District Court alleged that detectives in the Peoria Police Department illegally obtained evidence in their investigation of Plaintiff. Plaintiff's case in the United States District Court was dismissed on August 29, 2003.

On October 2, 2003, and February 28, 2004, Plaintiff filed grievances related to the law library being closed. Plaintiff appealed his grievances to the institutional grievance officer on October 6, 2003, January 24, 2004, and May 9, 2004. Plaintiff attempted to have his Post-Conviction Motion, Memorandum of Law, and Proof of Service notarized on November 24, 2004.

On December 15, 2005, the Peoria County Circuit Court ordered Plaintiff to file a response to the defendants' Motion to Dismiss. On January 27, 2005, Plaintiff's case was dismissed by the Peoria County Circuit Court. On February 9, 2005, Plaintiff mailed his Notice of Appeal of the Peoria County Circuit Court's decision.

Plaintiff filed an institutional grievance related to Defendants Paula Rich ("Rich") and Mark Spencer ("Spencer") on April 11, 2006. Also on April 11, 2006, the Third District of the Illinois Appellate Court dismissed Plaintiff's appeal.

On August 13, 2007, Plaintiff's Post Conviction Petition was dismissed by the Peoria County Circuit Court. Plaintiff mailed a Motion to the Circuit Clerk and the State's Attorney's Office on September 12, 2007.

On June 17, 2008, the Peoria County Circuit Clerk denied Plaintiff's Motion to Reconsider. Plaintiff filed his Notice to Appeal on July 2, 2008, which was determined to be untimely.

On October 2, 2009, Defendant Clark responded to an inquiry from Charles Scheidel. On October 8, 2009, and October 19, 2009, Defendant Michelle Clark ("Clark") sent memoranda to Plaintiff.

Plaintiff filed this Complaint January 26, 2011. At all times relevant to this cause of action, Defendants were employed by the Illinois Department of Corrections at Pontiac.

## ANALYSIS

**I.    Plaintiff's Claims for Actions Arising Prior to January 26, 2009, are barred by the Statute of Limitations**

Defendants argue that they are entitled to summary judgment because Plaintiff's claims are barred by the statute of limitations. Defendants state that 42 U.S.C. § 1983 actions arising in Illinois are governed by Illinois' two-year statute of limitations for personal injury claims. *Kelly*

*v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Federal law governs the accrual of claims. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). Generally, a claim accrues when the plaintiff knows, or has a reason to know, of the injury giving rise to the cause of action. *Id.* Civil rights claims, therefore, accrue when the plaintiff knows or should have known that his or her constitutional rights have been violated. *Id.* In applying these state limitations statutes, federal courts also follow the tolling laws of the state where the injury occurred. *Hardin v. Straub*, 490 U.S. 536, 543 (1989). A federal court relying on the Illinois Statute of Limitations in a § 1983 case must toll the limitations period while a prisoner completes the administrative grievance process. *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). Failure to comply with mandatory grievance procedures makes tolling of the statute of limitations unavailable. *Santiago v. Snyder*, 211 Fed. Appx. 478, 480 (7th Cir. 2007) (*citing Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002)).

Plaintiff filed his Complaint on January 26, 2011. Plaintiff claims that he was denied access to the Courts. He claims that, but for the actions of Defendants, his cases in the Circuit Court and the Appellate Court would not have been dismissed. [d/e #1, paragraph 80]. Plaintiff had at least two cases in the Peoria County Circuit Court. The first case was dismissed on January 27, 2005. On April 6, 2005, the Illinois Appellate Court denied his appeal. This Court finds that any allegations against Defendants related to this lawsuit and appeal are barred by the statute of limitations.

Plaintiff had a second case before the Peoria County Circuit Court. It appears that his second case was related to his post-conviction appeal. On August 13, 2007, the Peoria County Circuit Court dismissed his post-conviction appeal. Plaintiff's Motion for Reconsideration was denied by that same Court on June 17, 2008. Additionally, Plaintiff's July 2, 2008, Notice of

Appeal was deemed untimely by the Third District Appellate Court. Therefore, the Court finds that any allegations against Defendants related to this second case are barred by the two-year statute of limitations.

## II. Plaintiff's Claims Regarding his Post-Conviction Appeals are Barred by *Heck v. Humphrey*, 512 U.S. 477 (1994)

To proceed under 42 U.S.C. § 1983 for relief from harm caused by alleged violations of constitutional rights leading to wrongful conviction or imprisonment, a plaintiff must first show that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. 477. In a case such as *Heck*, where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and he cannot get damages until the conviction is invalidated. *Hoard v. Reddy*, 175 F.3d 531, 534 (7th Cir. 1999). To establish a deprivation of access to the courts, a prisoner must show that unjustified acts or conditions "hindered his efforts to pursue a legal claim." *Nance v. Vieregge*, 147 F.3d 589 (7th Cir. 1998) (*quoting Lewis v. Casey*, 518 U.S. 343, 351 (1996)). "If the injury in question is losing the underlying case, then *Heck v. Humphrey*, 512 U.S. 477 (1994), comes into play." *Heck* holds that a damages remedy that necessarily implies the invalidity of a criminal conviction is impermissible while that conviction stands. *Nance*, 147 F.3d at 591.

Plaintiff makes reference to multiple lawsuits in his Complaint. The first lawsuit was one filed in the Peoria County Circuit Court. (ECF No. 112 at 2, Undisputed Material Fact #3). This case was directly related to Plaintiff's criminal case. (ECF No. 112 at 2, Undisputed Material Fact #4). The second case was against the Peoria Police Department, which alleged that detectives illegally obtained evidence in their investigation of Plaintiff's underlying criminal

5

case. (ECF No. 112 at 3, Undisputed Material Fact # 11). That case was in the United States District Court for the Central District of Illinois. (ECF No. 112 at 3, Undisputed Material Fact #10). Plaintiff also filed a post-conviction appeal in the Peoria County Circuit Court. (ECF No. 112 at 3, Undisputed Material Fact #16). That appeal was denied. Plaintiff filed a Motion for Reconsideration, which was also denied. (ECF No. 112 at 4, Undisputed Material Fact #18).

Based on the above procedural history, Defendants argue that Plaintiff is attempting to claim that he was hindered in his ability to have his conviction overturned. The first case was an attempt to show that his children were unconstitutionally questioned and forced to give evidence against Plaintiff. (ECF No. 1, paragraph 15). The case against the Peoria Police Department involved similar allegations to the first case. Namely, that members of the Peoria Police Department unconstitutionally took custody of Plaintiff's children, unconstitutionally questioned them, and then illegally used this evidence in their prosecution of Plaintiff. (ECF No. 1, paragraph 45). Finally, Defendants argue that Plaintiff's third lawsuit was a direct appeal of his conviction. This Court agrees and finds that all three lawsuits sought to challenge the validity of Plaintiff's incarceration and are therefore barred by the *Heck* doctrine. Plaintiff is still incarcerated and his conviction still stands. Therefore, the Court finds that he cannot challenge the validity of the conviction.

Plaintiff claims that he was prevented from fully prosecuting his post-conviction appeal because the law library was regularly closed and he was not given enough access to research his claims. Plaintiff makes specific allegations against Defendants Spencer and Clark in relation to his post-conviction motion. He claims that he discussed the denial of his motion with Defendant Spencer and requested that Defendant Spencer speak with his appointed appellate counsel. (ECF No. 1, paragraph 73). Plaintiff's post-conviction appeal was denied as untimely on July 2, 2008.

(ECF No. 112 at 4, Undisputed Material Fact #19). The Court finds that in addition to being barred by the statute of limitations, the allegations against Defendant Spencer related to Plaintiff's post-conviction motions and appeals, are barred by the *Heck* doctrine.

Plaintiff claims that Defendant Clark communicated with Plaintiff as well as with Plaintiff's appointed counsel in October 2009. Specifically, Defendant Clark sent Plaintiff's counsel a letter dated October 2, 2009, and sent Plaintiff two memoranda dated October 8, 2009, and October 19, 2009. (ECF No. 112 at 4, Undisputed Material Facts #20 and #21). The Court finds that while these claims do fall within the two-year statute of limitations, they are still barred by *Heck*; as are any other claims made by Plaintiff that the Defendants interfered with his ability to appeal his conviction. Therefore, Defendants are awarded summary judgment on claims related to Plaintiff's lawsuits challenging his conviction.

### III. The Court Does Not Have Jurisdiction Over Plaintiff's Claims of Intentional Infliction of Emotional Distress

Plaintiff claims that Defendants caused him severe emotional distress by denying him access to the law library and interfering with his access to the Courts. Defendants argue in their Motion for Summary Judgment that this is really a claim against the State of Illinois and is only nominally a claim against the individual Defendants. Defendants argue that none of the Defendants acted outside of their authority and there are no allegations to the contrary. Additionally, the duty owed to Plaintiff, namely to allow him access to the law library, is not a duty owed to the public but was created as a result of the Defendant's state employment. Finally, Defendants argue that the actions alleged are related to actions which normally fall within the Defendants' duties as state employees.

Intentional infliction of emotional distress is a tort. The Illinois Court of Claims has been given exclusive jurisdiction over claims against the State of Illinois for damages sounding in tort.

705 ILCS 505/8(d) (West 2009). The prohibition against making the State of Illinois a party to a suit cannot be evaded by making an action nominally against state employees when the real claim is against the State of Illinois itself and the State is the party vitally interested. *Healy v. Vaupel*, 133 Ill.2d 295, 308 (Ill. 1990). Whether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends not on the formal identification of the parties but rather on the issues involved and the relief sought. *Id.* A claim against state employees is really a claim against the State when (1) there are no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts, (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of state employment, and (3) the complained-of actions involve matters ordinarily within those employees' normal and official functions of the State. *Id.* at 309. Additionally, where the duty alleged to have been breached is imposed solely by virtue of the individual's employment with the State, sovereign immunity attaches and exclusive jurisdiction lies in the Court of Claims. *Currie v. Lao*, 148 Ill.2d 151, 159 (Ill. 1992). "Treating such actions against state employees as actions against the State prevents plaintiffs from sidestepping state immunity by naming only individual state employees as defendants." *Brandon v. Bonell*, 368 Ill.App.3d 492, 505 (2d Dist. 2006). The Court finds that Plaintiff's claim for intentional infliction of emotional distress belongs in the Court of Claims. For this reason, Defendants are awarded summary judgment on this claim.

**IV.     42 U.S.C. § 1983 Does Not Recognize Supervisory Liability**

Plaintiff also asserts a claim for failure to properly train and supervise against Defendants Clark, Twagilimana, and Spencer. Plaintiff claims that they are responsible for the torts committed by their agents as the policy making authority lies with all of these individuals. (ECF

No. 1, ¶88). Defendants argue in their Motion for Summary Judgment that Plaintiff's claim for supervisory liability fails because the doctrine of *respondeat superior* does not apply to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724 (7th Cir. 2001). To be held liable, a defendant must be personally responsible for the deprivation of a constitutional right. *Id.* at 740. Personal involvement is a prerequisite for an individual's liability in a § 1983 action; a defendant must have caused or participated in an alleged constitutional deprivation to incur liability. *Kuhm v. Goodlaw*, 678 F.3d 552, 556 (7th Cir. 2012). Supervisors who are simply negligent in failing to detect and prevent subordinate misconduct are not "personally involved" so as to incur liability. *Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003). A supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. *Id.* They must act knowingly or with deliberate, reckless indifference. *Id.* For these reasons, the Court finds that Plaintiff's claims against Defendants Clark, Twagilimana, and Spencer fail and these Defendants should be awarded summary judgment on Plaintiff's claims that Defendants Clark, Twagilimana, and Spencer failed to properly train and supervise their subordinates.

V.  **Plaintiff's Conspiracy Claim is Barred by the Intracorporate Conspiracy Doctrine**

Plaintiff claims that Defendants conspired together to interfere with Plaintiff's access to the courts and to cause him severe emotional distress. (ECF No. 1 at ¶89). Defendants argue that Plaintiff's claim is barred by the intracorporate conspiracy doctrine.

The intracorporate conspiracy doctrine holds that a conspiracy cannot exist solely between members of the same entity. *Wright v. Ill. Dept. of Children & Family Serv.*, 40 F.3d 1492, 1508 (7th Cir. 1994). In *Wright*, the Seventh Circuit explained that managers of a corporation jointly pursuing its lawful business do not become conspirators when acts within the

scope of their employment are said to be discriminatory. *Wright*, 40 F.3d at 1508. The Seventh Circuit has applied this reasoning to supervisors and subordinates, as long as all are working in the corporation's (or governmental entity) interest. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632-33 (7th Cir. 1999). *See Hartman v. Bd. of Trustees of Cmty. Coll.*, 4 F.3d 465, 471 (7th Cir. 1993).

In the instant matter, all of the Defendants were employees of the Illinois Department of Corrections. All of the Defendants were working in furtherance of the interest of the Illinois Department of Corrections. As a result, the Court finds that Plaintiff's claim is therefore barred, and Defendants should be awarded summary judgment on Plaintiff's conspiracy claims.

**VI.     Defendants Are Protected by the Doctrine of Qualified Immunity**

To determine if an official is entitled to qualified immunity, a Court considers: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *see also Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (Saucier's procedure should not be regarded as inflexible; district courts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of a particular case).

Plaintiff has the burden of establishing the existence of a clearly established constitutional right. *McGrath*, 44 F.3d at 570 (*citing Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988)). Clearly established rights must be proven through closely analogous cases. *McGrath*, 44 F.3d at 570. Therefore, through qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Accordingly, Defendants are entitled to qualified immunity from Plaintiff's claims. Therefore, the Court grants summary judgment to Defendants on this issue.

In the instant case, the Court finds that Plaintiff failed to show that any of his clearly established rights were violated. Based on the facts of this case, Plaintiff's claims fail for a variety of reasons: (1) Plaintiff's claims for actions arising prior to January 26, 2009, are barred by the statute of limitations; (2) Plaintiff's claims regarding his post-conviction appeals are barred by *Heck v. Humphrey*; (3) the Court does not have jurisdiction over Plaintiff's claims of intentional infliction of emotional distress; (4) 42 U.S.C. § 1983 does not recognize supervisory liability; (5) Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine; and (6) Defendants are protected by the doctrine of qualified immunity.

**IT IS THEREFORE ORDERED:**

>**1) Defendants' Renewed Motion for Summary Judgment is GRANTED [d/e 111]. The Clerk of the Court is directed to enter judgment in favor of all remaining Defendants and against Plaintiff. This case is terminated, with the parties to bear their own costs.**

>**2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).**

>**3) If Plaintiff wishes to proceed *in forma pauperis* on appeal, his motion for leave to appeal *in forma pauperis* must identify the issues Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee regardless of the outcome of the appeal.**

ENTERED this 13th day of March, 2014.

                                                                 <u>        /s/ Michael M. Mihm        </u>
                                                                               MICHAEL M. MIHM
                                            UNITED STATES DISTRICT JUDGE